WESTCHESTER COUNTY.—HON. OWEN T. COFFIN, SURROGATE.—October, 1887.

HAVILAND *v.* COCKS.

*In the matter of the judicial settlement of the account of* PHEBE C. HAVILAND, *and others, as executors of the will of* JOHN COCKS, *deceased.*

In order to render a bequeathed annuity a demonstrative legacy, and so not liable to abatement in case of a deficiency of assets, the will must specify certain property owned by the testator in kind, the income arising wherefrom is to produce the amount of the annual provision.

Testator, who left an estate of the value of about $125,000, by his will directed the executors "to invest such sum of my (his) property as will net one thousand dollars . . . . . per year . . . . . and from such sum so invested to pay" to his widow, A., "the sum of one thousand dollars per year," from his decease, during widowhood, in lieu of dower; made provision for other beneficiaries; and disposed of the remainder.

Upon a judicial settlement of their accounts, it appeared (1) that one of the executors had, in hand, all that remained of the estate, viz.:

$7,000, of which about $4,000 represented principal rescued from the wreck of an unauthorized investment, and the balance accumulated interest; and (2) that A.'s claim for arrears of annuity was sufficient to exhaust the entire fund.—

*Held*, that the annuity was a general legacy ; and that, of the fund in question, A. was entitled only to the accumulated interest in the executor's hands, and such interest as might thereafter accrue upon the remaining *corpus*.

THE testator, John Cocks, died in 1868, leaving an estate of the value of about $125,000, of which $45,000 consisted of mortgages mostly on lands in Westchester county. He left him surviving his widow, Adelia Cocks, and five children, namely, Mary, Phebe, Anna, David and Harrison, Mary being then the wife of George J. Barlow, and Phebe the wife of Daniel E. Haviland. These were all made executors of his will. Anna afterwards became the wife of —— Varney. The first clause of the will is as follows : " First. I direct my executors hereinafter named, and the survivors of them, to invest such sum of my property as will net one thousand dollars, over and above all taxes and assessments, per year, upon bond and mortgage upon real estate in the county of Westchester, within three months after my decease, and, from such sum so invested, to pay to my beloved wife, Adelia Cocks, the sum of one thousand dollars, per year, from my decease, and to be paid to her by my said executors semi-annually, so long as she shall remain my widow, unmarried, and no longer, and this provision to my said wife is in lieu of dower."

By the second clause, he gave to his daughter, Anna, the sum of three thousand dollars, and by the third clause, he gave all the rest and residue of his

estate, "including the above invested sum," when the widow should cease to be interested in it, to the above named five children, share and share alike, and provided that David's share should be invested on bond and mortgage, the income whereof was directed to be applied to the support of himself, wife and children, during his life, and, at his death, his share to be equally divided among his children. The executors, Daniel E. Haviland, and Phebe his wife, and Mrs. Varney had been released by the widow, and they had no personal interest in the present controversy. George J. Barlow, and wife, and Harrison Cocks became the chief acting executors. Barlow died insolvent, and Harrison Cocks was living in the same condition. David Cocks never had anything to do with the management of the estate. He was, by proper proceedings, declared to be a lunatic, or person incompetent to manage his affairs, and George J. Barlow was appointed his committee, and David's share was paid to him. Mrs. Haviland, as executrix, had in her hands about $7,000 of the money of the estate, of which about $4,350 was principal,—and all that remained of the *corpus* of the estate, the residue being accumulations of interest upon it.

On this judicial settlement of the account, the chief question was in regard to the disposition of the principal fund then in the hands of Mrs. Haviland; and chiefly whether it could be used toward the extinguishment of the arrears of annuity, which exceeded that sum. For further facts reference is made to the case of Cocks v. Barlow (5 *Redf.*, 406).

M. L. COBB, *for executors, Haviland and Varney.*

JAMES A. HUDSON, *for Adelia Cocks, widow.*

F. LARKIN, *for executors, Mrs. Barlow and H. Cocks.*

WM. M. SKINNER, JR., *special guardian.*

THE SURROGATE.—I have before had occasion to advert to the mismanagement of this large estate (5 *Redf.*, 406). All that remains of an estate valued at $125,000, which can be called in question here, so far as the widow is concerned, is the sum of about $7,000. After investing in some western State $10,000, at an interest of ten per cent., to produce the annuity of $1,000 for the widow, the executors, having paid the $3,000 legacy to Anna, proceeded to divide what was in a condition for a division, among themselves as residuary legatees, except the share of David, which went into the hands of George J. Barlow as the committee of his person and estate. Whether it so passed into his hands by order of the Supreme Court, or simply because he already had it and kept it, does not appear. Barlow about a year since died, as it is understood a bankrupt, and the pecuniary circumstances of Mrs. Barlow and Harrison Cocks are said to be no better. Mr. and Mrs. Haviland and Mrs. Varney have been settled with by the widow, and are no longer liable individually, or as executors. A decree can be taken against the former for the arrears of the annuity, if it shall be deemed expedient. There is reasonable ground to apprehend that it would be fruitless in results. All that remains as *corpus* of the estate is $4,350, rescued chiefly from

the wreck of the western investment, together with nearly $3,000 of accrued interest. As it is now understood, the amount of annuity due to the widow is equal to the accrued interest and the sum so constituting the present *corpus* of the estate; and the question is whether this court can direct the payment of the whole to her.

The legacy is not specific, nor is it what is called demonstrative. To give it the latter character, a testator should specify certain property which he has, in kind, the income of which shall produce the amount of the legacy, as if it were made payable out of the interest of a bond and mortgage he then had, or out of dividends on certain stocks he then owned, and the like (see Walton v. Walton, 7 *Johns. Ch.*, 268). If, in this case, the testator had, by his will, set apart bonds and mortgages he then had, to the necessary amount, and directed the executors to pay the legacy or annuity of $1,000, out of the interest that accrued thereon, then it would have been a demonstrative legacy. But it will be seen that he did not do that. He simply directed his executors to invest sufficient of his estate on bond and mortgage, to produce interest enough, yearly, to pay the annuity. It follows that the legacy is general. The only peculiarity about it is, that the mode of raising it is indicated. Hence, being general, it is subject to abatement. If, for instance, the executors had invested $18,000 in the manner directed by the will, and, in the course of time, from depreciation in values and other unforeseen causes, one half the amount so invested was lost, the annuitant would receive only a moiety of the legacy,

the other legatees under the will having been paid in full, without any liability, on their part, to refund. She could not compel the executors to make up the deficiency out of what remained of the principal.    The testator undoubtedly supposed that he was making a provision which would result in the payment of the annuity to the wife during widowhood, but his anticipation has failed.    In Baker v. Baker (6 *H. of L. Cas.*, 616), the LORD CHANCELLOR argued, against a construction which would take from the fund itself, to make up a deficiency of annual avails, that such a course might, in time, utterly annihilate the *corpus*, and the beneficiary be left without any provision at all; and that, therefore, nobody could suppose that such an intention could ever have existed in the mind of the testator.    Here, that destruction of the *corpus* would at once be effected, if the contention on the part of the widow were to be sanctioned.

In the case of Dickin v. Edwards (4 *Hare*, 273), it is said by the VICE· CHANCELLOR, that there is no doubt that, where a testator bequeaths a sum of money in such a manner as to show a separate and independent intention that the money shall be paid to the legatee at all events, that intention will not be held to be controlled, merely by a direction in the will that the money is to be raised in a particular way, or out of a particular fund, and he cites authorities to sustain that proposition.    There, the legacy of $1,000 was directed to be raised out of the sale of timber, and it was held that the personal estate could not be resorted to.    Here I can discover no evidence of a *separate* and *independent* intention that the annuity is

to be paid *at all events*.   The other legacies were to be paid at the end of a year from testator's death, which it must be assumed he knew, and were in fact then paid, thus leaving no part of the estate to which resort could be had to make good the deficiency, except the fund to be invested for the designated purpose ; and this, as has been shown, cannot be done.

The conclusion is, that the widow is entitled only to the accumulated interest of the fund remaining, and such as may accrue thereon in the future.

It is claimed by the special guardian of the minor children of David Cocks, that the executors are liable for the share of which David had the use, because they permitted it to pass into the hands of George J. Barlow, where it was lost.   He was appointed the committee of David's person and estate by the Supreme court.   If that court directed the fund to be paid to him, it is difficult to see how the other executors can be held liable for the *devastavit*.   In any event, this court is not possessed of facts sufficient to enable it to pass upon the question.   If desired, the case will be held open for the reception of such evidence as may be offered on the subject.

It appears that a credit of $500 was claimed and allowed in the account filed on the former accounting, by the executor, George J. Barlow, as paid for services of counsel to the estate.   No voucher in support thereof was filed, and no objection was made to such item.   It is now alleged, by the counsel representing Mrs. Barlow and Harrison Cocks in this proceeding, that such amount was not in fact paid, and is still due and ought to be paid out of the estate.   The answer

is, that it has been, in effect, so paid already, by allowing the executors credit therefor.   That counsel is not a party to this proceeding, and an individual claim of his cannot, properly, be here considered. While he ought to be compensated for his services, his remedy is against those for whom they were rendered.

It is also claimed that an allowance was made in the former decree, of $200 to Cocks and the Barlows, for services of counsel in that proceeding, and that it should be decreed to be paid out of the fund now in hand. The plain meaning of that decree was that they should retain it out of moneys of the estate with which they were chargeable, and not that it should be paid to them out of the remnant remaining in the hands of the other executors.   Without entering into other considerations adverse to the claim, it must be held that, if there be any remedy, it is under that decree, and that no new adjudication can now be made, at this late day.

In case the proceedings terminate at this stage, a moderate allowance for costs will be made to the executrix, Mrs. Haviland, to the widow, and to the special guardian, to be paid out of the principal fund.